HON. YOUNG J. POPE, CHIEF JUSTICE.
HON. EUGENE B. GARY, ASSOCIATE JUSTICE.
HON. IRA B. JONES, ASSOCIATE JUSTICE.
HON. C. A. WOODS, ASSOCIATE JUSTICE.

### PROVIDENCE MACHINE CO. v. BROWNING.

1. NONSUIT—PARTNERSHIP.—There being some evidence here tending
to show that the alleged partners had combined capital and labor in
a business enterprise for common benefit, the question of partnership
should have been submitted to the jury, notwithstanding the decla-
ration of all parties that one was not a partner.
2. IBID.—GUARANTOR—DEFENSE.—That evidence of alteration in time
of payment of debt, and of shipment of goods to corporation instead
of to partnership as contracted, is brought out of plaintiff's witnesses
on cross-examination, is not ground for nonsuit, as these are de-
fenses, and should be passed on by jury.
3. GUARANTY of payment for machinery made after contract of sale,
but before delivery of machinery, does not require other considera-
tion to support it.
4. IBID.—GUARANTOR.—Where machinery is purchased by a partnership,
and shipped to and received by a corporation of same name formed

1—68

by partners to carry on same business at same place, it is error to take from jury release of guarantor by such alteration.

5. GUARANTOR.—Under guaranty of payment, it is not necessary to hold the guarantor that creditor should make demand on principal debtor, give notice to guarantor of non-payment, nor to use due diligence in pressing principal debtor.

Before JAS. P. CAREY, special Judge, Laurens, December 1, 1902.   Reversed.

Action by Providence Machine Co. against J. S. Blalock, L. W. C. Blalock and M. E. Browning.   From order of nonsuit, plaintiff appeals.

*Messrs. N. B. Dial* and *F. P. McGowan,* for appellants, cite: *Inferences may be drawn from written instruments without producing them:* 52 S. C., 82; 2 Rich., 140; 2 Bail., 324.   *As to evidence of partnership:* Parsons on Con., ch. 2, sec. 1; 22 Ency., 2 ed., 38; 2 N. & McC., 428; 2 McC., 367; 6 Allen, 468; 14 Wend., 20; 60 Me., 468; 1 Lind. on Part., 161, 86; 2 Spear., 170; 4 Rich., 309; 22 Ency., 2 ed., 55.   *Nonsuit should not be granted, if new trial would not:* 44 S. C., 317; 21 S. C., 93.   *Payment and satisfaction is question of intent:* 15 S. C., 72; 17 S. C., 362.   *Nonsuit should not be granted on evidence showing matter of defense brought out on cross-examination of plaintiff's witnesses:* 26 S. C., 258; 52 S. C., 503; 51 S. C., 180; 42 S. C., 14; 43 S. C., 26; 46 S. C., 546.   *Release of guarantor is for jury:* 2 Bail., 56; 14 Ency., 2 ed., 1164; 41 Fed. R., 859; 2 N. Y. App. Div., 152; 28 Vt., 159; 1 McC., 94.   *Mere passivity or delay does not release guarantor:* 3 Rich., 121; 10 S. C., 200; 3 Strob. Eq., 64; 1 McC. Ch., 107; 5 S. C., 340; 9 Ency., 83.

*Messrs. D. W. Robinson, Ferguson & Featherstone,* and *Johnstone & Welch, contra.   Messrs. Ferguson & Featherson,* cite: *Guaranty is without consideration:* 6 Ency., 750, 752; 1 Strob., 329; 2 Spears, 697; 14 S. E. R., 886; Chitty

on Con., 54-55; 40 Barb., 512; Clark on Con., 184; Harper, 169; 33 Ala., 265; 3 Ency., 890-1; 32 S. C., 242; Chitty, 442; 1 Met., 278; Chitty, 51; 3 Brev., 17; Chitty, 458; 16 Barb., 356; 13 Johns., 190; 1 Strob., 40. *Contract having been changed, guarantor was discharged:* Brandt, sec. 79; 3 Kent, 124; 9 Wheat., 103; 23 S. C., 590; 17 S. C., 4; 22 S. C., 288; 165 N. Y., 372; 9 Wall, 13; Sterns on Sur., 103, 163; 10 Ga., 235; Brandt, sec. 388; 24 Ency., 1 ed., 749; Brandt, sec. 330; 14 Ency., 2 ed., 1162; 41 S. C., 334; 61 N. Y., 39; 14 Ill., 24; 5 Pet., 536; Brandt, secs. 387, 345; 59 S. W. R., 698; 51 S. C., 121; 1 How., 182; Theobold on Sur., 66; Fell on Guar., 116; Brandt, sec. 79. *Guaranty was one of solvency:* 3 McC., 236; 43 Ga., 442; Brandt, sec. 84; 1 Hill, 56; 19 S. C., 599; Brandt, sec. 168; Stearns on Sur., secs. 62, 63; 14 Ency., 2 ed., 1150; 21 S. C., 327; 28 S. C., 504.

December 8, 1903. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an appeal from an order of nonsuit. The action was against James S. Blalock, L. W. C. Blalock and Mrs. M. E. Browning, individually, and as partners, under the firm name of Goldville Manufacturing Co., and against the Goldville Manufacturing Company, a corporation of this State, being based:

(1) Upon a contract in writing, dated July 30, 1900, for the purchase of machinery to the amount of $9,104.52, to be delivered by plaintiff to the firm, Goldville Mfg. Co., about December 15, 1900, terms, one-half cash, one-fourth in six months, one-fourth in twelve months, deferred payments secured by bankable notes, bearing interest at six per cent. per annum, this contract being signed "Goldville Mfg. Co., L. W. C. Blalock."

(2) Upon an instrument in writing, dated September 7, 1900, signed Goldville Mfg. Co., per J. S. Blalock, and by J. S. Blalock, L. W. C. Blalock and M. E. Browning, which, after reciting the terms of the contract of July 30 above,

contained these stipulations: "We hereby agree to indorse the said notes, and should the Goldville Mfg. Co. fail to pay for the said machinery on terms of contract made between themselves and Providence Machine Co., dated July 30th, 1900, or shall fail to pay any notes when due, which are given in payment, we the undersigned do hereby bind and obligate ourselves, jointly and severally, each with the other, and with the Providence Machine Co., to make good and pay the Providence Machine Co. the amounts which may be due them in accordance with the contract above mentioned."

(3) Upon a note dated May 1st, 1901, executed by Goldville Manufacturing Co., J. S. Blalock, president, L. W. C. Blalock, secretary and treasurer, and indorsed by J. S. Blalock and L. W. C. Blalock, promising to pay to the order of Providence Machine Co., six months after date $2,317.10, with interest at six per cent. per annum. The complaint demanded judgment for $2,317.10, with interest at six per cent. per annum from May 1, 1901.

The Goldville Manufacturing Co. was incorporated on October 22d or 23d, 1900, but thereafter becoming insolvent, was placed in the hands of a receiver in December, 1901, before the commencement of this action. The machinery was duly shipped to the Goldville Mfg. Co. about 10th or 13th of December, 1900, was received, and was placed in the mill being in process of construction by the corporation, Goldville Mfg. Co., which had been begun by the partnership, Goldville Mfg. Co., at Goldville, S. C., in July or August, 1900. The cash payment was made 31st January, 1901, but notes for deferred payments were not taken upon the delivery of the machinery. But on May 1st, 1901, two notes, one of which is set forth in the complaint, were received by the plaintiff. Neither note was indorsed by M. E. Browning, and so far as appears they were not presented to her for indorsement. The issues in the case arose upon the contest of Mrs. M. E. Browning, that she was not a

partner in the Goldville Mfg. Co. firm, and that she was not liable upon the guaranty.

The motion for nonsuit was made upon the following grounds: "I. Because there is no evidence that Mrs. Browning was a partner at the time this debt sued on herein was contracted, and there is no evidence that she was to become at any time liable for the debt sued on herein.    II. Because the contract sued on herein is without any valuable consideration and is, therefore, void.    III. Because the undisputed evidence offered by the defendants shows that the guaranty sued on herein is for and of the performance of the contract of date July 30, 1900, in accordance with the terms thereof, and that the guarantor, Mrs. Browning, has been released and discharged from liability on the guaranty: 1st. In that it appears from plaintiff's undisputed evidence that the contract was made by the partnership firm of J. S. and L. W. C. Blalock, under the firm name of Goldville Manufacturing Co., prior to the creation or existence of the corporation hereinafter named, and the said contract was for the delivery of the machinery therein mentioned to said partnership, while, in fact, and subsequent to the contract and guaranty, the machinery was delivered by the plaintiff to the corporation, Goldville Manufacturing Co., of Goldville, South Carolina, and this change in the said contract was made without the knowledge or approval of Mrs. M. E. Browning, the guarantor sued herein.    2d. In that the plaintiff failed to require the cash payment provided for in the said contract of July 30, 1900, and failed to require the execution of the notes, as provided in said contract or within a reasonable time thereafter, but on the contrary, waived and assented to a change in time for such cash payment, and assented and agreed to waive the execution of the notes as provided for in the contract, and agreed to accept the bonds of the company in lieu of the notes and in payment of the debt, all without the knowledge or assent of Mrs. M. E. Browning, the guarantor, sued herein.    IV. Because the plaintiff had failed to allege and show that it used diligence: 1st. In

making demand of the principal debtors at the time of the delivery of the machinery or within a reasonable time thereafter, for the first cash payment and for· the execution and indorsement of the notes for the balance, in accordance with the terms of the contract of July 30, 1900. 2d. In failing to prosecute the principal debtors promptly and in a reasonable time after their failure to comply with the said contract of July 30, 1900, for such failure and to collect its said debts. 3d. In giving notice to Mrs. M. E. Browning, the guarantor, sued herein, promptly and within a reasonable time after it happened, that the principal debtors had failed to keep and comply with their contract of July 30, 1900, as to cash payment and as to the giving and indorsement of the notes. 4th. Because the evidence shows that the breach after the contract guarantee occurred in December, 1900, or January, 1901, and the only and first notice that was given this guarantor was the paper signed by O. A. Robbins, of date November 7th, 1901. V. The evidence shows that the plaintiff has failed to use due diligence: 1st. In making demand on the principal debtor at the time of the delivery of the machinery, or within a reasonable time thereafter, for the first cash payment and for the execution and indorsement of the notes for the balance, in accordance with the terms of the contract of July 30th, 1900. 2d. In failing to prosecute the principal debtors promptly and within a reasonable time after their failure to comply with said contract for such failure and to collect its said debt. 3d. In giving notice to Mrs. M. E. Browning, the guarantor sued herein, promptly and within a reasonable time after it happened, that the principal debtors had failed to keep and comply with their said contract of July 30, 1900, as to the cash payment and as to the giving and indorsement of the said notes. VI. Because there is no evidence that Mrs. Browning guaranteed the payment of the notes sued on herein, but, on the contrary, the plaintiffs' evidence shows that it is a different note from the guaranty. VII. Because the undisputed evidence shows that the plaintiff accepted the notes sued on herein, and waived those pro-

vided for in the contract of guaranty by accepting the notes of the principal debtor, and there is no evidence that Mrs. Browning consented to such change, and that the plaintiffs waived their right to proceed against the guaranty in case of loss."

Hon. J. P. Cary, special Judge, presiding, granted the following order of nonsuit:

"This is an action brought by the plaintiff against the defendant on a contract made with L. W. C. Blalock, as Goldville Manufacturing Co., and on a contract of guaranty afterwards made by the defendants, Mrs. M. E. Browning and others, guaranteeing the payment of the purchase money of said machinery according to the terms of said contract of purchase. Plaintiff also claims that Mrs. Browning and others are liable as partners. At the close of plaintiff's testimony, the defendant, Mrs. Browning, moved for a nonsuit on various grounds, which are set out in the record. I think the nonsuit should be granted for two reasons:

"First. There is no testimony showing, or tending to show, that Mrs. Browning was ever a partner in the firm of Goldville Manufacturing Co. Her only connection with the company was as a stockholder in the corporation, which corporation was chartered after the contract was made.

"Second. Plaintiff's own testimony shows the following state of facts: That the contract for the purchase of the machinery provided for the delivery some time in December, 1900; that it was delivered in December, 1900; that one-half of the purchase money was to be paid upon the delivery; one-fourth of balance in six months thereafter, and the other fourth in twelve months thereafter; that bankable notes were to be taken for the deferred payments, and that the guarantors were to indorse said notes; that the cash payment provided for in the contract was made in the early part of the year 1901, but that no notes as provided for in the contract were given at that time; that on May 1st, 1901, the notes of Goldville Manufacturing Co., signed on back J. S. and L. W. C. Blalock, were given for deferred payments; that

the. said notes matured in six months and twelve months from May 1st, 1901; that said notes were accepted by plaintiff in 'settlement' of the account for said machinery, and plaintiff sent Goldville Manufacturing Co. a statement showing the acceptance of the notes in 'settlement;' that Mrs. Browning had no knowledge of, nor did she acquiesce, in said change of contract.

"I hold that these facts show a change in, and material alteration of the contract of guaranty, on the strict terms of which the guarantor had a right to stand, and that such change of contract operated in law as a release of the guarantor.

"It is, therefore, ordered, that the nonsuit be granted and the complaint be dismissed."

We think the Court erred in granting the nonsuit. While it is true that J. S. Blalock testified that Mrs. Browning was never interested in the cotton mill before the incorporation of the Goldville Manufacturing Co., he also testified that her teams were used without compensation in the erection of the mill. Mrs. Browning also testified that she was not a partner in the Goldville Manufacturing Co., but beginning at folio 172, she further testified: "My father is J. S. Blalock, and L. W. C. Blalock is my brother. I was at Goldville at my brother's most of the summer of 1900. I had what interest my father chose to give me in the Goldville Manufacturing Co. Q. Did you deed your interest in the oil mill and ginnery at Goldville to the Goldville Manufacturing Co., and also some land to the Goldville Manufacturing Co? (Objected to by Col. Ferguson as secondary, as the papers will show better.) A. If it was necessary I did, but I don't remember now. Before the Goldville Manufacturing Co. was chartered, I consented to sign a guarantee. Q. In July, 1900, were you not interested in building a cotton mill at Goldville? (Objected to by Col. Ferguson on the ground that it is incompetent and irrelevant, being before this action was commenced.) A. Well, in a manner I was. Father and brother were the prime

movers in the transaction.   J. S. Blalock, my father, was anxious to get my consent, as he wanted to use the proceeds of some of my property.   I acquiesced in so far as to sign some papers.   I knew my brother, L. W. C. Blalock, went on to buy machinery.   I was very much opposed to the whole transaction.   I did not take any stock in the mill. I was never asked to take any.   I was led to believe that I would have some stock, but I did not know how much or how little.   No script was ever issued to me.   My father had the management of my plantation for years.   My brother, L. W. C. Blalock, looked after my interest in the mill.   Before the mill was chartered, I think they were to borrow the money and make a family affair of it.   My father was to secure my consent about the time they contemplated building the mill, some time during the summer of 1900.   I never was in favor of the mill, but after the machinery was bought I was asked to sign the contract, and I did.   I did not know that my brother was using my name in regard to building the mill, but I suppose it would be natural to speak of it in this way, as we were the only persons interested.   Q. Why was the mill incorporated?  A. I do not know, but I thought it was better.   I did not acquiesce, in so many words, but, after it was done, I thought it was best."   If J. S. Blalock, L. W. C. Blalock and Mrs. M. E. Browning combined capital, labor or skill for the purpose of business for common benefit, they were partners, notwithstanding their mere declarations to the contrary. The foregoing certainly afforded some testimony that they were partners, which should have been submitted to the jury to determine its sufficiency to establish the issue raised.

With reference to the second ground of nonsuit.   On the cross-examination of plaintiff's witness, defendant proved and introduced in evidence a letter dated May 6, 1901, addressed to Goldville Manufacturing Co., in which receipt of the two notes of May 1, 1901, was acknowledged and which contained these words, "Enclosed please find statement in settlement."   This accompanying state-

ment of account, after crediting account with the two notes, concluded with these words, "Settled as above, May 6th, 1901. (Signed) Providence Machine Company, F. Pierce." The letter being signed, "W. C. Pierce, Treas." These facts the Circuit Judge considered as conclusively establishing that the contract of guaranty had been materially altered so as to discharge the grantor. This was a matter of defense and for the jury to determine. In the case of *Wallington & Russell* v. *Railroad Company,* 26 S. C., 258, 2 S. E., 19, the Court held that the defendant is not entitled to a nonsuit upon the strength of a written contract introduced by him upon the cross-examination of one of the plaintiff's witnesses. The same principle has been frequently applied in insurance cases, in which the Court held nonsuit improper even though matter of defense, as forfeiture of policy, be brought out during the examination of plaintiff's witness. *Sample* v. *Insurance Co.,* 42 S. C. 14, 19 S. E., 1020; *Copeland* v. *Assurance Company,* 43 S. C., 26, 20 S. E., 754; *Carpenter* v. *Accident Co.,* 46 S. C., 546, 24 S. E., 500. At folio 141, Wm. C. Pierce, the president and treasurer of plaintiff company, testified that these notes "were given to secure payment of the balance due and not in settlement of account or otherwise." The notes were signed by the Goldville Manufacturing Co. as a corporation, of which Mrs. M. E. Browning was stockholder, if not also director, which corporation had taken and used the machinery for which the notes were given. So that, assuming that the acceptance of the notes by plaintiff would be evidence of an extension of the time of payment in alteration of the original contract, it should have been left to the jury to say whether Mrs. Browning had knowledge of and acquiesced in the extension of the time of payment and the substitution of the name of the corporation for that of the partnership as a maker of the notes.

Respondent has given notice in the record that in case the Court does not sustain the nonsuit on the grounds taken by the Circuit Court, that she will ask that the nonsuit be sus-

tained upon the other grounds urged in the motion and set out above. These grounds substantially are: (1) That there was no testimony to show any consideration for the contract of guaranty. (2) That the contract of guaranty was altered, in that the machinery was delivered by plaintiff to the corporation, Goldville Manufacturing Co., when the contract provided for a delivery to the partnership, Goldville Manufacturing Co. (3) The evidence showed want of diligence on part of plaintiff in notifying defendant of the default of the principal and in failing to prosecute the principal debtor promptly, &c.

The first ground has been considered in the recent case of *Fales & Jenks Machine Co.* v. *Mrs. M. E. Browning, post,* wherein the Court held that "a guaranty for the payment of goods for which a contract of sale is made, though executed subsequently to the agreement of sale, is supported by a sufficient consideration, if the goods are not delivered until after the guaranty." The contract of guaranty in this case was made September 7, 1900, and the goods were not delivered until in December, 1900.

The second question, in so far as it was material, was a question for the jury. The evidence tended to show that the machinery was shipped to the party ordering it, the Goldville Manufacturing Co., and that plaintiff at that time was not aware that the Goldville Manufacturing Co. had become incorporated. The evidence further tended to show that the corporation was formed for the purpose of carrying on the business begun by the partnership and to raise money for the purpose by floating the corporate bonds; that the partnership and the corporation had the same name, business and location; that the stockholders of the corporation were J. S. Blalock, L. W. C. Blalock and Mrs. M. E. Browning, and that J. S. Blalock was president and L. W. C. Blalock, secretary and treasurer; that Mrs. Browning was present at some of the meetings of the stockholders; that her brother, L. W. C. Blalock, looked after the interest of Mrs. Browning in the mill; that her father, J. S.

Blalock, looked after the management of her plantation, adjoining the mill property; that before the mill was chartered, they were to borrow the money and make a family affair of it. Under these circumstances, a Court would hardly be justified in taking the question from the jury, and deciding as matter of law that the contract of guaranty was altered so as to discharge Mrs. Browning as guarantor, merely because the corporation took and used the machinery ordered by the partnership.

With reference to the third question above, as to the discharge of the guarantor because of the alleged want of diligence in pursuing the principal debtor. In the case of *Fales & Jenks Machine Co.* v. *Mrs. M. E. Browning,* *supra,* this Court construed a contract of guaranty in terms identical with the contract in this case. Under like construction, the contract in question is not a guaranty of collectibility, but a guaranty of payment, provided the Goldville Manufacturng Co. failed to do so; it is not a conditional guaranty but an absolute guaranty. Under such a contract, it is not essential to hold the guarantor that the creditor should make demand for payment of the principal debtor; give notice of non-payment to the guarantor, nor to use diligence in pursuing the principal debtor by the use of legal process. *Savings Bank* v. *Strother*, 28 S. C., 506, 6 S. E., 313.

Having reached the conclusion that the nonsuit must be set aside and a new trial granted, we do not deem it important to consider the remaining exceptions.

The judgment of nonsuit is reversed and the case is remanded for a new trial.