## PROVIDENCE MACHINE CO. v. BROWNING.

1. GUARANTOR—JURY.—An absolute guarantor of the payment of a debt for which notes were to be given and indorsed by guarantor, and delivered to creditor, upon performance by him of certain things, is not released from liability as guarantor by failure of debtor to execute notes within reasonable time after performance by creditor; nor is such guarantor relieved of liability by reason of the fact that time of payment is extended by such notes, unless it was the intention of the parties to postpone the maturity of the original debt to the time named in the notes, or to accept the notes in settlement of the debt; which are questions for jury.

2. PRINCIPAL AND AGENT.—A BOOK-KEEPER who has authority to make and alter contracts, may state an account so as to be binding on his principal.

3. EVIDENCE—PARTNERSHIP.—DECLARATIONS of another that one is a member of a partnership, are not proper evidence.

4. IBID.—DE BENE ESSE—ADMISSION.—Testimony of a party taken *de bene esse* on his own motion and used at a former trial, may be introduced by the adverse party at a second trial; but the fact that such evidence was afterwards admitted as a declaration of the party against interest, cures the error of ruling it out in first instance.

5. EXCEPTION not stating grounds of error will not be considered.

6. EXCEPTION rested on the assumption of a fact in dispute cannot be sustained.

7. CHARGE.—It is not error to fail to instruct jury upon particular view of the law in absence of a request.

Before TOWNSEND, J., Laurens, January, 1902. Reversed.

Action by Providence Machine Company against M. E. Browning. From judgment for defendant, plaintiff appeals.

*Messrs. N. B. Dial* and *F. P. McGowan,* for appellant, cite: *Error to exclude evidence of defendant, de bene esse, on motion of plaintiff:* 27 S. C., 68; 1 Brev., 162; 2 Bail., 119; 26 S. C., 130; 44 S. C., 312; 16 Ency., 676. *What constitutes partnership:* 1 Par. on Con., ch. 2, sec. 1; 2 N. & McC., 428; *and may be proven by declarations of one:* 1 Lind. on Part., 16; 4 Rich., 309; 2 Spear, 170; 22 Ency., 53; 121 U. S., 575; 3 McC., 364; 2 Ibid., 347. *When question of reasonable time is for the Court:* 24 Me., 131; 52 Miss., 610; 9 Ency., 614; 46 S. C., 511; 21 S. C., 79; 19 Wall., 560. *As to liability of promoters of a corporation:* 10 Cyc., 269. *Who becomes a partner:* 69 S. C., 13; 1 Pars. on Con., ch. 2, sec. 1; 22 Ency., 38; 2 N. & Mc., 428. *As to discharge of guarantor:* 1 DeS., 315; Brant on Sur., 430-2; 44 Sup. C. R., 142; 2 Cyc., 177. *No dispute as to facts, Judge may grant new trial:* 66 S. C., 61.

*Messrs. Ferguson & Featherstone,* contra, cite: *Declarations of agent not competent until agency shown:* 28 S. C., 144; Story on Ag., 9 ed., 136. *What is reasonable time is question for jury:* 19 Ency., 642; 4 Mas., 345; 10 Rich., 419; 1 Bail., 322; 3 Rich., 71. *As to effect on guaranty of change in the contract:* 19 S. C., 4; 22 S. C., 288; 23 S. C., 590.

*Mr. H. J. Haynsworth,* also contra, cites: *Change in contract releases surety or guarantor:* 23 S. C., 590; 41 S. C., 217; 24 Ency., 835. *As to what is a partnership:* 22 Ency., 14, 15.

November 12, 1904.  The opinion of the Court was delivered by

Mr. Justice Gary.  This is an action against James S. Blalock, L. W. C. Blalock and Mrs. M. E. Browning, individually, and as partners, and against the corporation known as the Goldville Manufacturing Company, of Goldville, S. C., to recover the price of certain machinery alleged to have been sold and delivered by the plaintiff to the defendants.  After the commencement of the action, all the defendants except Mrs. M. E. Browning went into bankruptcy, and no judgment was claimed against them.

Mrs. Browning answered the complaint, denying that she was a partner, and setting up the defenses that she was released from her liability as guarantor by reason of the fact that the time for payment was extended by the plaintiff without her consent, and that the indebtedness was satisfied by notes given on the 1st day of May, 1901.  On the 30th day of July, 1900, the plaintiff proposed to the Goldville Cotton Mill to furnish it certain machinery to be delivered about the 15th of December, 1900, for $9,104.52, upon the following terms: "One-half cash, one-fourth in six months, one-fourth in twelve months.  Payments to be made in current exchange.  Deferred payments secured by bankable notes bearing interest at six per cent. per annum.  The builders will furnish men to erect machinery, you paying $4.00 per day for erection while at mill, and furnish common labor for unboxing, cleaning and assisting in erecting the same."  This proposition was accepted.

On the 7th September, the following instrument of writing was executed: "Whereas, the Goldville Manufacturing Company, Goldville, S. C., have purchased machinery from the Providence Machine Company, Providence, R. I., amounting to nine thousand one hundred and four dollars and fifty-two cents ($9,104.52), payable one-half cash, one-fourth in six months; one-fourth in twelve months; deferred payments to be secured by bankable notes, bearing interest at six per cent. per annum.  We hereby agree to indorse the said notes, and

should the Goldville Manufacturing Company fail to pay for the said machinery on terms of contract made between themselves and the Providence Machine Company, dated July 30th, 1900, or shall fail to pay any notes when due which are given in payment, we, the undersigned, do hereby bind and obligate ourselves jointly and severally each with the other and with the Providence Machine Company to make good and pay to the Providence Machine Company the amounts which may be due them in accordance with contract above mentioned.

Goldville Manufacturing Co., per J. S. Blalock.

J. S. Blalock, L. W. C. Blalock, M. E. Browning.

Goldville, S. C., September 7th, 1900."

On the first day of May, the notes were made. The one described in the complaint is as follows:

"$2,317.10.                    Goldville, S. C., May 1st, 1901.

Six months after date, we promise to pay to the order of Providence Machine Company, two thousand three hundred and seventeen and 10-100 dollars, at Providence, Rhode Island, with interest thereon, and at six per cent. per annum, value received.

Goldville Manufacturing Co., J. S. Blalock, President.

L. W. C. Blalock, Secy. and Treas.

Signed on back J. S. Blalock and L. W. C. Blalock."

The letter acknowledging the receipt of the notes is as follows:

"Providence, R. I., May 6th, 1901.

Goldville Manufacturing Co., Goldville, S. C.

Gentlemen: Two notes duly to hand. Enclosed find statement *in settlement*. The item of $81.94 is for interest on $4,552.26, on one-half of account from date due, January 12th to May 1st, date of notes (would refer you to your letter of April 22).

Yours truly, W. C. Pierce, Treas."

The following is a copy of the statement enclosed in the letter:

"Providence, R. I., May 1st, 1901.

Goldville Manufacturing Co. to Providence Machine Co., Dr.

1900.                    For account rendered.

Dec. 12. For merchandise per bill
    rendered................................... $9,104 52

1901.                              Cr.

Jan. 31. By cash................ 4,552 26
108 days interest, from January 12th
    to May 1st................ 81 94
                    ————— $4,634 20

Cr.

May 6. By note, May 1, 6 mos.... $2,317 10
       By note, May 1, 12 mos...... 2,317 10
                    ————— $4,634 20

Settled as above, May 6th, 1901.
        Providence Machine Company, by F. Pierce."

The machinery was shipped on the 10th and 12th of December, 1900, to the Goldville Manufacturing Co., which was incorporated on the 23d of October, 1900. Mrs. Browning became a stockholder if not also a director of this corporation. The cash payment was made, but notes for the deferred payments were not signed by Mrs. Browning nor indorsed by her. The jury rendered a verdict in favor of the defendant, and the plaintiff has appealed upon numerous exceptions.

*Opinion.*

We will first consider the assignments of error on the part of his Honor, the presiding Judge, in charging the jury that, if the notes were given within a reasonable time after the

delivery of the machinery, the defendant was released from her liability as a guarantor.

After the Circuit Judge had submitted the case to the jury, they came into the Court room for further instructions, and upon being asked by the presiding Judge whether their difficulty arose from a difference of opinion as to the law or as to the facts, the foreman replied, "It seems to be a diversity of opinion as to when this note should have been given." The presiding Judge thus concluded his second charge to the jury, which states succinctly his construction of the contract: "The notes should have been given when the machinery was delivered or within a reasonable time thereafter. When it was delivered, is a matter of fact for you. What is a reasonable time, is a matter of fact for you to find out, and if you were to find that the notes were not given within a reasonable time afterwards, then under the law that would be a change of the contract, as I construe the paper, and a change of the contract, if ever she guaranteed the contract, would release her, so far as the guaranty is concerned. I am asked to charge you, if there was a change, and she consented or acquiesced in it, what would be the effect? Well, if this lady, if there was a change, and she consented or acquiesced in it with full knowledge, then it would not release her; but if there was a change without her knowledge, without her consent and acquiescence, then she would not be." The assignments of error to this charge are as follows:

"The errors being: (1) Laying down too narrow a limit for the giving of the notes; (2) in not declaring the law of reasonable time, but leaving it to the jury; (3) in not charging that three or four months under the circumstances was not an unreasonable time; (4) in violation of sec. 26, art. V., of the State Constitution, by charging the jury in respect to matters of fact, in saying that if the notes were not given at the delivery of the machinery or not within a reasonable time thereafter, the contract was changed and the guarantors released; (5) the change, if any, was immaterial, a mere

delay, non-action on the part of the guarantors as well as
principal debtor and the actual delay of four and one-half
months was not, as a matter of law, an unreasonable time
under the circumstances; (6) because the defendant, as
guarantor, is estopped to plead delay in the execution of the
notes, as she was at fault in not signing notes, and in not
making request upon the creditor to hasten up the transac-
tion; and was a director and stockholder at the time of the
execution of the notes, and was represented by her agent,
L. W. C. Blalock, in her connection with the mill; (7) be-
cause the machinery had to be erected before the full
performance of the contract; (8) the guaranty enlarges upon
the terms of sale, and stipulates for two classes of notes;
first, indorsed bankable notes, as security for the credit por-
tion of the purchase money; second, any kind or form of
notes given in payment not security when due, not necessa-
rily at six or twelve months from delivery of the machinery."

On the former appeal in this case (68 S. C., 1), this Court
said: "The contract in question is not a guaranty of collect-
ibility but a guaranty of payment, provided the Goldville
Manufacturing Co. failed to do so; it was not a conditional
guaranty, but an absolute guaranty." The Circuit Judge,
under the pleadings, properly charged that if the notes were
executed within a reasonable time after the machinery was
delivered, the defendant was not discharged from her liabil-
ity under the guaranty. But it was error when he charged
that if the notes were not executed within a reasonable time
after the delivery of the machinery, that the defendant was
thereby released from liability. The only duty incumbent
on the plaintiff under the terms of the agreement was to de-
liver the machinery and furnish men to erect it, which duty
was fulfilled. It was the duty of the Goldville Manu-
facturing Co. to deliver the notes in conformity with the
requirements of the contract, and its failure to perform this
duty cannot be attributed to the plaintiff as an act of wrong,
but is chargeable to the guarantors, who had obligated them-

selves to make payment in case the principal failed to perform its part of the agreement.

Furthermore, the charge was erroneous in that the Circuit Judge expressly charged, or necessarily assumed as a fact, which was set up as a defense, that the notes materially changed the terms of the contract by extending the time of payment, or that the notes were accepted in satisfaction of the indebtedness, which fact was also relied upon as a defense in the answer. Mere indulgence extended the principal by the creditor will not discharge the guarantor. *Shubrick* v. *Russell,* 1 DeS. Eq., 315; *Witte* v. *Wolfe,* 16 S. C., 274. In order that a new or collateral agreement shall have the effect of discharging the guarantor from liability by reason of the fact that it fixes the day of payment beyond that mentioned in the original contract, it is necessary that it should be based upon valuable consideration and be legally binding upon the parties entering into it. *Parnell* v. *Price,* 3 Rich., 121; *Witte* v. *Wolfe,* 16 S. C., 274; *Gardner* v. *Gardner,* 23 S. C., 588; 27 Enc. of Law (2d ed.), 500. A collateral agreement between the principal and the creditor by which the creditor receives additional security for the debt, will not suspend or postpone his right of action on the original agreement, so as to discharge the guarantor, unless it was the intention of the parties to the collateral agreement that the right of action on the original contract should be suspended or postponed until the time of maturity named in the collateral agreement. *United States* v. *Hodge,* 6 How., 279—cited in *Gardner* v. *Gardner,* 23 S. C., 588. The effect of taking a note or obligation is thus stated in 27 Enc. of Law, 491: "Much controversy has arisen as to the effect to be attached to the mere aceptance by the creditor of a negotiable note or other obligation. Several difficulties arise. There may be doubt as to whether the note is accepted in satisfaction of the old obligation, or as collateral security merely, or in conditional payment. Again, there may be a question whether the acceptance of the security operates as an agreement on the part of the creditor to extend time. The

liability of the surety on the principal debt can, of course, be enforced only where the obligation is taken solely as collateral or additional security. If it be taken in satisfaction, or in conditional satisfaction, the surety is discharged. The understanding of the parties at the time of the transaction will, of course, control, but in many cases it is necessary to resort to the legal presumptions that arise. Where the creditor takes new negotiable paper from the debtor, the surety is *prima facie* discharged. This is true, whether the question arises in those States where negotiable paper operates as *prima facie* satisfaction, or in those States where it operates as conditional payment only. In the one case, the debt is *prima facie* paid; in the other, there is a *prima facie* extension of time. If, instead of being negotiable, the security taken consists in bonds, mortgages or other choses in action, the presumption that it was taken in satisfaction or in conditional payment does not arise, and it is *prima facie* treated as collateral only. The fact that such collateral matures in the future, is not of itself sufficient to raise the presumption of an extension of time such as to release the surety."

In the application of these principles, the jury must determine whether there was such a change in the contract as to release the defendant. Merely construing the language of the warranty, it is manifest that the parties did not contemplate that the giving of the notes in "payment" of the indebtedness should be "in settlement" of the liability resting upon the obligors under the terms of the warranty. Therefore, if the words "in settlement" in the letter and statement were used in the sense of the word "payment," as intended by the parties in the guaranty, then they do not show that the plaintiff intended to release the defendant from her obligation as a guarantor. Whether the words were so used, presents a question of fact for the jury. *Glover* v. *Gasque,* 67 S. C., 18; *Thompson* v. *Protective Union,* 66 S. C., 459.

It will thus be seen that the liability of the defendant was dependent upon the intention with which the notes were

executed and not upon the question whether they were made within a reasonable time after the delivery of the machinery. The charge of his Honor, the presiding Judge, was, therefore, erroneous.

The next question for consideration is whether his Honor erred "in allowing the defendant's attorney, against the plaintiff's objection, to introduce in evidence a statement of F. Pierce, the book-keeper of the plaintiff, purporting to show an alleged settlement of the account by notes of Goldville Manufacturing Co.; the error being that it does not come within the scope of the authority of a book-keeper to make contracts for the company." The statement, as we have said, was enclosed in the letter hereinbefore mentioned, which was written in reply to one of the Goldville Manufatcuring Co. The statement was adopted by W. C. Pierce, who had the authority to make or alter contracts entered into with the company, and the ruling was correct.

The first exception is as follows: "I. His Honor, the presiding Judge, erred, it is respectfully submitted, in excluding the testimony offered by the plaintiff at the trial in the following particulars: (1) In the deposition, *de bene esse,* of William C. Pierce, the statement of L. W. C. Blalock that the Goldville Manufacturing Co. was a partnership, composed of Jas. S. and L. W. C. Blalock and Mrs. M. E. Browning. (2) The testimony of the defendant, Mrs. M. E. Browning, as a deposition, *de bene esse,* taken upon her own motion before O. K. Mauldin, Esq., notary public, and used in evidence in the former trial of the case. (3) The questions propounded by plaintiff's attorney to the witness, L. W. C. Blalock, as to what was the object of the promoters of the Goldville Manufacturing Co. in having it incorporated; what was the cost of building and equipping the mill, and the amount of the debts owing by the Goldville Manufacturing Co. and its promoters, when it was chartered on October 23, 1900. (4) The record or judgment roll of the Court of Common Pleas for Laurens

County, in said State, in the case of the *C. N. & L. Railroad Co.* v. *the Goldville Manufacturing Co.*, of Goldville, S. C., the object of the testimony being to show the insolvency of the Goldville Manufacturing Co. on January 6, 1901, and the extent of its indebtedness. (5) Duplicate schedules of assets and liabilities of the Goldville Manufacturing Co., of Goldville, S. C., of Jas. S. and L. W. C. Blalock, being records in bankruptcy of the District Court of the United States for the District of South Carolina. (6) The question propounded by the plaintiff's attorney to the witness, L. W. C. Blalock, to refresh his memory, if he had not stated in a letter to Sexton Robbins Company, agent of plaintiff, as to who composed the firm of the Goldville Manufacturing Co."

The first assignment of error cannot be sustained, for the reason that the mere declarations of a person are not admissible in evidence for the purpose of establishing the fact that another is a member of a partnership. *Bank* v. *Anderson,* 28 S. C., 144.

Neither can the second assignment of error be sustained. The testimony seems to have been taken under section 2878 of the Code of Laws, and if so, either of the parties to the action had the right to call for its production. *Pulaski* v. *Ward,* 2 Rich., 119; *Petrie* v. *R. R.,* 27 S. C., 63. The fact that the witness examined was present at the trial did not deprive them of such right. *McLaurin* v. *Wilson,* 16 S. C., 402. After the presiding Judge ruled that the testimony was inadmissible, the plaintiff's attorneys offered it as an admission against the interests of Mrs. Browning, a party to the suit. The defendant's attorneys consented to its admission for that purpose, and it was introduced. The plaintiff thus had the benefit of the testimony; and conceding that there was error, it was not prejudicial.

The third assignment of error does not state in what particulars the ruling was erroneous.

It may be that the testimony mentioned in the

fourth and fifth assignment of error was admissible under the ruling in *Fales* v. *Browning,* 68 S. C., 13. But as it is not set out in the record, the Court cannot judge of its materiability.

The sixth assignment of error is not well taken. The testimony which the plaintiff's attorney sought to educe from the witness was irrelevant, unless the object was to show by the declarations of the witness that Mrs. Browning was a member of the partnership. We have hereinbefore shown that such testimony was inadmissible.

The tenth exception is as follows: "Because his Honor erred in charging defendant's first and second requests as follows: 'Persons may associate themselves together for the purpose of forming a corporation without being partners and without rendering themselves liable as partners;' and second, 'when a corporation is formed and one takes stock therein, he does not incur any liability as partner'—the error being that said propositions were inapplicable to the case and misleading, as the testimony shows that the promoters contracted debts as partners in building the mill and purchasing the machinery before the corporation was formed." It is not contended that the propositions of law embodied in the requests to charge were not sound, but that they were inapplicable and misleading in this case. The reason assigned by the appellant to show why they were inapplicable and misleading, is that the testimony shows that the promoters contracted debts as partners. This ground rests upon the assumption of a fact that was in dispute and hotly contested. This exception must, therefore, be overruled.

The eleventh exception is as follows: "Because his Honor erred in charging defendant's third request, as follows: 'A person cannot be made a partner against his will; so that if one does not consent to become a partner and does not permit his or her name to be used as a partner, there can be no ground of liability as such.' The

error being to ignore the law of a silent or dormant partner, because he may be held liable as a partner upon acts merely, such as the contribution of two or more persons of property, labor or skill, in some lawful purpose for their common benefit, although they may deny or be ignorant of the relation of partnership or its results." Again, it is not contended that the proposition in the request was unsound, but that his Honor should have charged the law as to silent or dormant partners. If the appellant desired the Circuit Judge to charge the law as to dormant partners, requests should have been presented to that effect. The exception cannot be sustained.

The views hereinbefore expressed practically dispose of all the questions in the case.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the case remanded to that Court for a new trial.